**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4216**

_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TYTUS LAMAAR SHIELDS,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Joseph R. Goodwin, District Judge.  (2:21-cr-00268-1)

_____

Argued:  September 26, 2024                               Decided:  January 22, 2025

_____

Before HARRIS, HEYTENS, and BERNER, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Heytens and Judge Berner joined.

_____

**ARGUED:**  Wesley P. Page, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Judson Campbell MacCallum, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Jonathan D. Byrne, Appellate Counsel, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  William S. Thompson, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

_____

PAMELA HARRIS, Circuit Judge:

Tytus Lamaar Shields pleaded guilty to possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). The district court calculated an advisory Sentencing Guidelines range of 51 to 63 months' imprisonment and sentenced Shields to 51 months in prison. Shields appeals, arguing that his sentence is procedurally unreasonable because the district court failed to address his non-frivolous argument for a downward variance. We agree. Because the district court failed to adequately address Shields's argument and explain the sentence imposed, we vacate the sentence and remand for resentencing.

## I.

In November 2021, law enforcement officers in Parkersburg, West Virginia, received information indicating that Tytus Lamaar Shields was transporting drugs into the area. Investigation revealed that Shields was on bond for pending criminal charges in Ohio and was considered a fugitive from justice. An arrest warrant was issued, and officers took Shields into custody at his West Virginia residence. During the arrest, they seized drugs, cash, and a loaded Ruger LC9 9mm firearm. Shields admitted the firearm was his.

Shields was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Specifically, Shields's indictment charged that he possessed the Ruger LC9 firearm while knowing he had been convicted of two Ohio felony offenses. Both Ohio convictions occurred in 2014, and one of them was for a violation of Ohio's drug trafficking

2

statute, Ohio Revised Code § 2925.03.   Shields pleaded guilty to the single-count indictment without a plea agreement.[1]

At issue in this appeal is Shields's sentencing and, specifically, application of Sentencing Guideline § 2K2.1(a)(4)'s increased base offense level, which applies, as relevant here, if a defendant has a prior felony conviction for a "controlled substance offense."   U.S.S.G. § 2K2.1(a)(4)(A) (2021).   In its Presentence Investigation Report ("PSR"), the probation office did not apply that base offense level in calculating Shields's advisory sentencing range.  It recognized that Shields had a prior felony conviction under Ohio's drug trafficking law.  But because our court had recently held in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), that a conviction under West Virginia's similar controlled substances law did not qualify categorically as a Guidelines "controlled substance offense," the PSR deemed § 2K2.1(a)(4) inapplicable.  As a result, Shields's base offense level in the PSR was 14 – not 20 – and his advisory sentencing range was 30 to 37 months' imprisonment.

The government objected, arguing that Shields's Ohio drug trafficking conviction was indeed a "controlled substance offense."  According to the government, Ohio's statute is distinguishable from the West Virginia statute at issue in *Campbell*:   Unlike West Virginia's statute, Ohio's does not reach inchoate "attempt" offenses, which we held in *Campbell* fell outside the Guidelines definition of a "controlled substance offense."  *See*

---

[1] As for the outstanding Ohio charges, Shields's bond was revoked, and he was ultimately convicted in Ohio court on multiple counts, including trafficking in fentanyl.

3

*Campbell*, 22 F.4th at 446–47.[2]  Instead, the least culpable conduct covered by the Ohio statute is possession with intent to distribute, making Ohio's drug trafficking law a categorical match for the Guidelines.  On that understanding, the government explained, Shields would have a base offense level of 20 – not the PSR's 14 – and a Guidelines range of 51 to 63 months' imprisonment.  The government asked the court to impose a sentence of 51 months.

In response, Shields asked for a sentence of 36 months, consistent with the PSR's Guidelines range.  But if the district court sustained the government's objection and instead adopted a 51-to-63-month range, Shields said, then it should grant a downward variance to 36 months.  Otherwise, according to Shields, application of the increased base offense level would lead to unfair and arbitrary results, with a defendant who committed a prior drug trafficking offense in Ohio subject to a higher advisory sentencing range than a defendant who was convicted for the same conduct in West Virginia.  To avoid this "unwarranted sentencing disparity," the court "should impose the same sentence on Mr. Shields – 36 months – based on his prior conduct" regardless of the state "where his prior conviction

---

[2] That definition, which appeared in U.S.S.G. § 4B1.2(b) (2021), has since been amended to include inchoate offenses as "controlled substance offense[s]."  *See Amendments to the Sentencing Guidelines* § 4B1.2(d) (Apr. 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf [https://perma.cc/Y3AS-25DW].  So today, a prior conviction under West Virginia's controlled substances statute qualifies as a "controlled substance offense" and triggers the increased base offense level under § 2K2.1(a)(4).

4

was sustained and how that conviction is treated" under *Campbell*.    J.A. 15–16 (Defendant's Sentencing Memorandum).

At Shields's sentencing hearing, the district court began by addressing the government's objection and the *Campbell* issue.  Shields acknowledged that there was no caselaw applying *Campbell* to Ohio's drug trafficking statute and did not attempt to rebut the government's objection as a legal matter.  Instead, Shields emphasized his equitable argument for a variance:  "[I]f the Court sustains the objection[,] a downward variance would be warranted to account for the unwarranted sentencing disparity that would result from someone being convicted of similar conduct in Ohio" facing a significantly higher Guidelines range than someone "having the same conduct with a prior conviction in West Virginia." J.A. 40–41.

The district court sustained the government's objection.  It thoroughly analyzed the Guidelines definition of "controlled substance offense," the Ohio drug trafficking statute under which Shields was convicted, and this court's decision in *Campbell*.  In the end, it agreed with the government:  While the West Virginia statute at issue in *Campbell* criminalized "attempted delivery," the Ohio statute was drafted differently and did not penalize inchoate offenses.  This meant that a violation of the Ohio statute, unlike a violation of the West Virginia statute, did qualify under the categorical approach as a "controlled substance offense" under the Guidelines.  The increased base offense level under § 2K2.1(a)(4) thus applied, resulting in a base offense level of 20 and a Guidelines range of 51 to 63 months' imprisonment.  In the course of this legal analysis, the court did not address Shields's equitable argument for avoiding sentencing disparities.

5

The district court then turned to the sentencing factors set forth in 18 U.S.C. § 3553(a). Shields again asked for a downward variance. He again argued that but for a happenstance of geography – a prior controlled substance offense committed in Ohio instead of West Virginia – he would be subject to a significantly lower base offense level and advisory sentencing range. He also briefly argued that his criminal history score overstated his criminal record, and he alluded to a difficult childhood, his significant state sentence, and the support he would receive from his family upon release. Without questioning counsel or commenting during this presentation, the district court sentenced Shields to a prison term of 51 months and a supervised release term of three years.

The court's explanation for its sentence focused on Shields's extensive criminal history, which the court described as "persistent criminal behavior" demonstrating "a total disregard for the law." J.A. 51. The court also recognized the lengthy state sentence Shields would be serving, noting that it sentenced Shields at the bottom of his Guidelines range in recognition of that consecutive state sentence. But the court did not address or make any reference to Shields's repeated argument that a downward variance was justified by an unwarranted disparity in the treatment of defendants who committed the same predicate drug offenses in different states.

## II.

On appeal, Shields challenges the procedural reasonableness of his sentence, arguing that the district court failed to engage with his non-frivolous argument for a downward variance to avoid an arbitrary sentencing disparity. We review the procedural

6

reasonableness of a sentence under a "deferential abuse-of-discretion standard." *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). We consider "whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). Directly relevant here is the requirement that a sentencing court "address the parties' nonfrivolous arguments in favor of a particular sentence, and if [it] rejects those arguments, [] explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *Blue*, 877 F.3d at 519; *see Ross*, 912 F.3d at 744–45.

**A.**

We agree with Shields that the district court committed procedural error when it failed to address his non-frivolous argument for a downward variance. In his sentencing memorandum and twice at his sentencing hearing, Shields argued for a downward variance to account for an unwarranted disparity between the 51-to-63-month Guidelines advisory range that applied to him and the 30-to-37-month range that would apply to a similarly situated felon-in-possession defendant who had committed the same prior drug offense in West Virginia, not Ohio. Congress has expressly instructed sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But the district court never addressed or otherwise engaged with this argument for a below-Guideline sentence.

7

The district court did, to be sure, carefully consider the legal issue of whether § 2K2.1(a)(4)'s increased base offense level applied to Shields, consistent with *Campbell*. But that is a different question, as we explained in *United States v. Torres-Reyes*, 952 F.3d 147 (4th Cir. 2020). There, the defendant argued that as a matter of law, certain offenses should not be included in the Guideline calculation of his criminal history. *Id.* at 151. He also argued that if the court disagreed, it should vary downward from the resulting Guidelines range as a matter of equity, in part to avoid creating unwarranted sentencing disparities. *Id.* at 151–52. The district court in *Torres-Reyes* considered the defendant's legal objection to the Guideline calculation but did not address his alternative equitable argument for a downward variance. *Id.* at 152. On appeal, this court concluded that Torres-Reyes's argument for a downward variance was a distinct, non-frivolous argument and that the district court had committed procedural error by failing to separately address it. *Id.* at 152–53.

The same conclusion applies here. The district court thoroughly addressed the legal merits of the government's objection to the PSR's Guideline calculation and the parties' positions on Shields's proper offense level. It did not, however, address or even acknowledge Shields's equitable argument about the disparity that would result from its resolution of that legal question. Nor did it "engage counsel in a discussion" from which we might be able to infer an explanation for its rejection of Shields's request for a downward variance. *Blue*, 877 F.3d at 521. Under those circumstances, we "cannot assume that [the] sentencing court truly considered" Shields's argument or meaningfully review the sentence it imposed. *Id.*

8

In response, the government reminds us that a district court need not address *every* argument for a lower sentence. *Blue* and similar cases obligate a court to address only a defendant's *non-frivolous* arguments, *see Blue*, 877 F.3d at 519, and Shields's *Campbell*-based argument, the government contends, is so frivolous that the court was free to ignore it. We disagree.

The government argues, first, that the sentencing disparity Shields points to is not the kind of disparity contemplated by § 3553(a)(6). That provision directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). According to the government, it is not intended to address disparities worked by variations in state statutes, but only to ensure that defendants with "the same prior criminal convictions" are treated similarly. And because Shields's prior Ohio drug trafficking conviction was treated just like any other defendant's prior Ohio drug trafficking conviction, there is no disparity to be addressed.

But § 3553(a)(6) is not so limited. It does not, in fact, refer to defendants with the "*same* prior criminal convictions," but instead to "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). And that is the crux of Shields's entire argument: The same prior conduct, with the same level of culpability, would lead to a different Guidelines sentencing range if it had resulted in a West Virginia conviction than it would if it had resulted in an Ohio conviction. If Shields had engaged in his prior drug-trafficking conduct in West Virginia and been convicted under West Virginia's statute, he would not have committed a "controlled substance offense" under the

9

Guidelines – not because of anything having to do with his conduct or culpability, but because of how West Virginia drafted its controlled substances statute. The outcome is different in Ohio only because of an unrelated legislative drafting choice and the categorical approach we apply in defining "controlled substance offense[s]" under the Guidelines. *See* J.A. 41–44 (district court explanation for why *Campbell* does not apply to Ohio's statute).

We think this is the kind of disparity a district court could consider under § 3553(a)(6). And it turns out that the government agrees: At oral argument, the government recognized that the district court could have varied downward on this basis without rendering its sentence substantively unreasonable. That forthright concession, which we appreciate, effectively settles the issue before us. Categorizing as "frivolous" an argument that could permissibly lead to a lower sentence is a contradiction in terms.

In any event, we also are unpersuaded by the government's second argument, which is that Shields is seeking what amounts to an undeserved "windfall" bestowed by *Campbell* on defendants with prior drug convictions in West Virginia. According to the government, Shields was not *penalized* when his Ohio drug trafficking offense was, like most state drug trafficking offenses, treated as a "controlled substance offense" under the Guidelines. Instead, he was deprived of a *benefit* that accrued to certain defendants with prior West Virginia drug convictions under *Campbell*. The problem, in other words, is not Shields's higher sentencing range, but the lower ranges of those other defendants – a position embraced, the government says, by the recent Sentencing Guidelines amendment adjusting the definition of a "controlled substance offense" so that violations of West Virginia's

10

statute now qualify. *See Amendments to the Sentencing Guidelines* § 4B1.2(d) (Apr. 27, 2023).

Had the district court considered the government's argument, it might have agreed. But the district court did not consider it. And contrary to the government's suggestion, an argument for a lower sentence is not frivolous simply because there are reasons why it should not be adopted. There are, after all, two sides to most sentencing arguments – which is why it is so important that the district court address those arguments, explaining its thinking to the parties and allowing this court to engage in "meaningful appellate review." *Blue*, 877 F.3d at 519.

Shields's argument for a downward variance was not frivolous, and the district court was obliged to address that argument and explain why it was rejected. Its failure to do so rendered Shields's sentence procedurally unreasonable. *See id.*

**B.**

The government also argues that even if the district court committed procedural error by failing to address Shields's *Campbell*-based argument for a downward variance, that error was harmless. We again disagree.

In *Ross*, we applied the harmless-error standard to a sentencing court's failure to address a defendant's non-frivolous arguments for a lower sentence. The burden is on the government, we explained, to "prove that the error did not have a substantial and injurious effect or influence on the result." 912 F.3d at 745 (quoting *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010)). In this context, that means the government must show that "explicit consideration" of a defendant's "mitigating arguments would not have affected

11

the ultimate term of confinement imposed." *Id.* And we are talking here, by definition, only about "mitigating arguments" that are not frivolous – that could, as the government conceded here, be the basis for a substantively reasonable downward variance. Where a defendant articulates a non-frivolous argument for a lower sentence – as in *Ross*, and as in this case – it may well be difficult for the government to prove that proper consideration of that argument could not have moved the sentencing needle. *Id.* (holding that government failed to prove harmless error because the district court "could have conceivably given [the defendant] a different sentence" had it considered his non-frivolous arguments).

Here, the government argues that it can meet this burden because Shields's mitigating argument, even if non-frivolous, was so relatively weak by comparison to his extensive criminal history, on which the district court was focused. And it is true that the court was especially concerned by Shields's "continued pattern of drug trafficking over a period of more than ten years," which did not stop even when Shields was on bond before trial in Ohio. J.A. 52. But the question at sentencing was not whether Shields's disparity-based argument for a downward variance somehow *outweighed* his criminal history. Nor were the choices before the district court limited to the 51-month within-Guideline sentence it imposed and the 36-month below-Guideline sentence Shields requested. Sentencing is not a binary inquiry, but a matter of degree. Even where one factor – say, an especially troubling criminal history – may push the length of a sentence substantially upward, another factor – say, avoidance of an arbitrary sentencing disparity – may nudge the sentence back down, even if only by a few months. The responsibility of the sentencing court is to weigh all of the relevant factors together. Here, as in *Ross*, we cannot look at

12

this record and say with assurance that the court could not "conceivably [have] given" Shields a somewhat lower sentence if it had considered and addressed his non-frivolous mitigating argument as part of that mix. 912 F.3d at 745.[3]

## III.

For the foregoing reasons, we vacate Shields's sentence and remand for resentencing proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[3] The government points us to unpublished decisions in which we have deemed *Blue*-type errors harmless in part because of the relative weakness of the defendants' mitigating arguments. *See United States v. Abdin*, 801 F. App'x 893, 896 (4th Cir. 2020); *United States v. Nelson*, No. 18-4922, 2020 WL 2536571, at *2 (4th Cir. May 19, 2020). We do not doubt, as *Ross* presupposes, that there may be cases in which a *Blue* error can be shown to be harmless. Our holding is simply that this is not such a case.